**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| ARTHUR JANSENIUS, | HONORABLE KAREN M. WILLIAMS |
| Plaintiff, | |
| v. | Civil Action |
| | No. 21-03203 (KMW-SAK) |
| HOLTEC INTERNATIONAL, *et al.*, | |
| Defendants. | **MEMORANDUM OPINION AND** |
| | **ORDER** |

**Christopher J. DelGaizo, Esquire**
Derek Smith Law Group, PLLC
1835 Market Street
Suite 2950
Philadelphia, PA 19103
*Counsel for Arthur Jansenius*

**James P. Anelli, Esquire**
White and Williams LLP
One Riverfront Plaza
1037 Raymond Boulevard
Suite 230
Newark, NJ 07102

**Robert M. Pettigrew, Esquire**
Ogletree Deakins Nash Smoak & Stewart, P.C.
10 Madison Avenue
Suite 400
Morristown, NJ 07960

**Ryan T. Warren, Esquire**
White and Williams LLP
1650 Market Street
One Liberty Place
Suite 1800
Philadelphia, PA 19103
*Counsel for Holtec International*

**John D. Shea, Esquire**
Freeman Mathis & Gary LLP
3 Executive Campus
Suite 155
Cherry Hill, NJ 08002
*Counsel for Brandon Murray and Sonic Systems International, Inc.*

Plaintiff Arthur Jansenius ("Plaintiff") began his affiliation with Defendants Holtec International, Brandon Murray, and Sonic Systems International, Inc. (collectively, "Defendants") in his work in the nuclear fuel industry. In June 2017, Plaintiff, who was working as a supervisor on a nuclear fuel transfer project, was diagnosed with stage four lung cancer. Thereafter, Plaintiff took a medical leave of absence from work for approximately seven months. In December 2017, Plaintiff began receiving Social Security Disability Insurance benefits. In February 2018, Plaintiff returned to work for approximately a year and a half, first working as a supervisor and later as a technician. Following a negative work performance evaluation in the fall of 2019, Plaintiff was no longer scheduled to work.

To maintain his Social Security Disability Insurance benefits, Plaintiff was required to submit continuing disability reports to the Social Security Administration. In a report submitted sometime between November 2020 and March 2021, Plaintiff claimed he "went back to work for awhile, but was unable to do [his] job due to [his] condition." In February 2021, Plaintiff filed the instant lawsuit claiming he was wrongfully terminated, discriminated against, and retaliated against due to his age and disability. Thereafter, during the course of this litigation, Plaintiff was deposed and testified that he was not "disabled" after returning to work from medical leave. Presently before the Court are Defendants' Motions for Summary Judgment brought pursuant to Federal Rule of Civil Procedure 56, which Plaintiff has opposed. Also before the Court are the parties' supplemental submissions addressing social security administrative records newly obtained during the course of this litigation.[1] For the reasons that follow, Defendants' Motions are denied.

---

[1] By text order, this Court granted the parties leave to file supplemental submissions to address the newly obtained social security administrative records and their relevance to the issues raised in Defendants' Motions for Summary Judgment. ECF No. 118.

In August 2013, Plaintiff became affiliated with Holtec and Sonic by working on a dry cask campaign ("campaign"), which involves the removal of used radioactive nuclear fuel from underwater storage to an area on a nuclear facility's property designated for dry fuel storage.[2] Holtec's Statement of Material Facts[3] ("Holtec's SMF") ¶¶ 18, 51; Plaintiff's Response to Holtec's Statement of Material Facts ("Pl.'s RSMF") ¶¶ 18, 51. Holtec provides equipment and associated services necessary for storing used nuclear fuel in dry storage casks at nuclear power plants. Holtec's SMF ¶ 1; Pl.'s RSMF ¶ 1. Sonic, in turn, provides talent and support services for nuclear power energy projects at power plants. Holtec's SMF ¶ 2; Pl.'s RSMF ¶ 2. Murray worked as a project manager on at least one of the Holtec campaigns Plaintiff worked on. Holtec's SMF ¶ 207; Pl.'s RSMF ¶ 207. Holtec and Sonic entered into purchase orders for staffing services to support Holtec's campaigns at various nuclear facilities operated by third-party power plants. Holtec's SMF ¶ 3; Pl.'s RSMF ¶ 3. Between August 2013 and June 2017, Plaintiff had at least six jobs on campaigns,[4] beginning as a technician and eventually working in a supervisor capacity.[5] Holtec's SMF ¶¶ 51-57; Pl.'s RSMF ¶¶ 34, 51-57.

---

[2] Whether Plaintiff was employed by both Holtec and Sonic or just one of the entities is in dispute. *See* Holtec's SMF ¶ 5; Pl.'s RSMF ¶ 5.

[3] The statements of material facts submitted by Holtec and by Sonic and Murray substantially overlap, as do the responses to those statements filed by Plaintiff. For this reason, the Court, for ease of reference, will only cite to Holtec's statement of material facts and Plaintiff's response to that statement when presenting the factual background of this case. The Court will reference Sonic and Murray's statement of material facts only when a fact is not included in Holtec's statement of material facts.

[4] The parties dispute Plaintiff's periods of work, lending to a dispute as to the continuity of Plaintiff's work on the campaigns. With regard to the periods of work Plaintiff had on campaigns between August 2013 and June 2017, Defendants claim Plaintiff had six periods of work. Holtec's SMF ¶¶ 51-54, 56-57. Plaintiff claims he had eleven periods of work. Pl.'s RSMF ¶ 34. While Defendants claim Plaintiff had six to eight-month gaps between campaigns with Holtec, Plaintiff claims the average gap between campaigns was three months. Holtec's SMF ¶ 35; Pl.'s RSMF ¶ 35.

[5] There are two types of classifications available for a technician and supervisor on a campaign – "Technician 1" or "Technician 2" and "Supervisor 1" or "Supervisor 2". Holtec's SMF ¶ 28; Pl.'s RSMF ¶ 28. When Plaintiff first began working on campaigns, he was classified as a "Technician 1". Holtec's SMF ¶¶ 51, 52; Pl.'s RSMF ¶ 34. Plaintiff later held "Technician 2" and "Supervisor 1" titles. Holtec's SMF ¶¶ 53-56; Pl.'s RSMF ¶ 34. It is disputed whether

In June 2017, Plaintiff was diagnosed with stage four lung cancer with thirteen brain lesions. Holtec's SMF ¶¶ 65-66; Pl.'s RSMF ¶¶ 65-66. Plaintiff stopped working and took a leave of absence for approximately seven months during which time he obtained various medical treatments, including radiation, chemotherapy, and immunotherapy. Holtec's SMF ¶¶ 68-70, 129; Pl.'s RSMF ¶¶ 68-70, 129. In July 2017, Plaintiff's wife filed an application on Plaintiff's behalf to the Social Security Administration (the "SSA") for Plaintiff's receipt of Social Security Disability Insurance ("SSDI") benefits. Holtec's SMF ¶ 121; Pl.'s RSMF ¶ 121. In the application, Plaintiff certified he "became unable to work because of [his] disabling condition on June 25, 2017," and that he remained disabled as of his application. Holtec's SMF ¶ 122; Pl.'s RSMF ¶ 122. In December 2017, Plaintiff was deemed eligible to receive SSDI benefits. Holtec's SMF ¶ 124; Pl.'s RSMF ¶ 124. Plaintiff was approved for SSDI benefits because a stage four cancer diagnosis is listed on an appendix used by the SSA to determine whether to grant benefits. Plaintiff's Brief in Response and Opposition to Holtec International's Motion for Summary Judgment ("Pl.'s Opp'n Br.") at 8. Accordingly, Plaintiff was eligible for SSDI benefits due to his cancer diagnosis and not by virtue of a statement or representation Plaintiff made to the SSA. Plaintiff's Response and Opposition to Holtec International's Supplemental Brief [6] ("Pl.'s Opp'n Br. - Supplemental") at 2. Before Plaintiff returned to work from medical leave, Plaintiff's wife contacted the SSA to stop Plaintiff's benefits at which time the SSA informed her of a "return to work" program in which Plaintiff was permitted to return to work while receiving benefits. Holtec's SMF ¶ 126; Pl.'s RSMF ¶ 126. The SSA explained that if Plaintiff was still working in

---

Plaintiff was accurately classified as a "Supervisor 2" before his medical leave. Holtec's SMF ¶¶ 59, 63; Pl.'s RSMF ¶¶ 59, 63.

[6] The Court notes Plaintiff submitted briefs in response to each of the supplemental filings submitted by Defendants. ECF Nos. 123, 125. As there is substantial overlap between the two briefs Plaintiff submitted, the Court, for ease of reference, will cite to Plaintiff's brief in response to Holtec's submission. ECF No. 123.

ten months, his benefits would be discontinued. Pl.'s RSMF ¶ 126. Plaintiff returned to work under the "return to work" program and repaid excess earnings while receiving SSDI benefits. Plaintiff's Counterstatement of Material Facts[7] ("Pl.'s CSMF") ¶ 135; Pl.'s Opp'n Br. - Supplemental at 3-4.

On February 1, 2018, Plaintiff returned to working on campaigns with permission to leave approximately every three weeks to receive medical treatment. Holtec's SMF ¶¶ 129, 156; Pl.'s RSMF ¶¶ 129, 156. Upon returning to work from medical leave, Plaintiff maintained a supervisor title during two campaigns.[8] Holtec's SMF ¶¶ 160, 175; Pl.'s RSMF ¶¶ 160, 175. During 2018, certain observations were made with regard to Plaintiff's job performance, including whether Plaintiff had accurately completed work-related paperwork. Holtec's SMF ¶¶ 191-92, 196; Pl.'s RSMF ¶¶ 191-92, 196. In addition, there was a concern as to whether Plaintiff could continue working as a supervisor. Holtec's SMF ¶ 203; Pl.'s RSMF ¶ 203. During Plaintiff's last two campaigns, Plaintiff worked as a technician.[9] Holtec's SMF ¶¶ 206, 219; Pl.'s RSMF ¶¶ 206, 219. Plaintiff expressed his discontent about not working as a supervisor. Holtec's SMF ¶ 216; Pl.'s RSMF ¶ 216. Following a negative performance evaluation in the fall of 2019, Plaintiff was no longer placed on campaign work schedules with Holtec and Sonic. Holtec's SMF ¶¶ 222, 246; Pl.'s RSMF ¶¶ 222, 246.

In late 2020 or early 2021, almost one year after he last worked on a campaign, Plaintiff submitted a Continuing Disability Review Report ("Continuing Disability Report") which is used

---

[7] The Court notes the Counterstatements of Material Facts Plaintiff submitted in response to Holtec and Sonic and Murray's Statements of Material Fact are identical. See ECF Nos. 108-4, 110-4.

[8] As previously stated, *infra* n.5, it is disputed whether Plaintiff was properly classified as a "Supervisor 2" before his medical leave. While the parties agree Plaintiff was classified as "Supervisor 1" upon his return from medical leave, it is disputed whether Plaintiff accepted or was assigned that position. Holtec's SMF ¶ 160; Pl.'s RSMF ¶ 160.

[9] It is disputed whether Plaintiff was demoted from a supervisor to a technician or whether he accepted the technician jobs because no other positions were available. *See* Holtec's SMF ¶¶ 28, 159; Pl.'s RSMF ¶¶ 28, 159.

by the SSA to determine whether a recipient of SSDI benefits is still disabled.[10] Pettigrew Sur-Reply Decl. at Ex. A.[11] In the report, Plaintiff provides, in relevant part, his medical conditions, medical treatments, with the names of healthcare professionals that treat him and treatment dates, and a list of prescription and non-prescription medicines he was taking at the time he completed the form. *Id.* A section titled "Remarks" is included at the end of the report with directions to "write any additional information . . . not give[n] in earlier parts of this report." *Id.* In this section of the report, the following is written:

> I went back to work for awhile, but was unable to do my job due to my condition. I am very unsteady on my feet, I forget and have a hard time communicating what I am thinking. I stumble when I walk and am in pain constantly. I have not worked in a year or more.

*Id.*

In February 2021, Plaintiff filed the instant action alleging that 1) Holtec and Sonic wrongfully terminated him and retaliated against him in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102; 2) Holtec and Sonic wrongfully terminated and retaliated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621; and 3) Holtec and Murray wrongfully terminated, disparately treated, and retaliated against him in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-

---

[10] The report submitted to the Court as evidence is not dated. *See* Pettigrew Sur-Reply Decl. at Ex. A. Therefore, it is unclear exactly when the report was filed. Page 6 of the report lists the dates of appointments Plaintiff had with one of his physicians. The form lists the last appointment Plaintiff had with the physician was "11/12/20", and the next scheduled appointment was "March 2021." Pettigrew Sur-Reply Decl. at Ex. A. Accordingly, it appears that this form was filed with the SSA sometime between November 12, 2020, and March 2021. Additionally, while the report indicates that Plaintiff completed the form himself, Plaintiff's wife has testified that she completed and submitted the form. Sonic and Murray's Statement of Material Facts ¶ 120. To avoid confusion and maintain consistency in this opinion, the Court will refer to the Continuing Disability Report as Plaintiff's submission rather than his wife's submission on Plaintiff's behalf.

[11] The Court notes substantial overlap between the exhibits submitted by Defendants in support of their Motions for Summary Judgment. The Court also notes substantial overlap between the exhibits Defendants submitted in support of their supplemental briefings. To the extent Defendants submitted the same exhibits, the Court will cite to Holtec's exhibits for ease of reference.

6

1. Amended Compl. at 6, 8, 9, 11-12; *see also* ECF No. 1. Specifically, the Amended Complaint alleges the following:

> Despite being returned to work, Plaintiff had difficulties performing everyday activities as he has/had fatigue, weakness, abdominal and back pain, headaches, speech issues, and other related conditions relating to his medical conditions, but Plaintiff was able to perform the essential functions of his job with or without reasonable accommodation.

Amended Compl. ¶ 20. In September 2022, Plaintiff was deposed and testified that at some point in time he learned that he would not be called back to work on campaigns.[12] Pettigrew Decl. at Ex. 8 at 278:23-279:3; 280:18-281:7.[13] Plaintiff spoke with Michael Gunther ("Gunther"), a floor operations manager of Sonic, who confirmed he did not see Plaintiff's name on the work schedule. Holtec's SMF ¶ 12; Pl.'s RSMF ¶ 12; Pettigrew Decl. at Ex. 8 at 280:20-281:7. Plaintiff did not inquire further about opportunities with Holtec or Sonic. Pettigrew Decl. at Ex. 8 at 281:8-15.

During Plaintiff's deposition, Holtec's defense counsel, on a few occasions, asked about Plaintiff's return to work following his medical leave. In one instance, defense counsel asked Plaintiff whether there was a point in his recovery when he felt he was medically fit to return to work to which he responded he felt better. The following exchange occurred, in relevant part:

> Q: Was there a point in your recovery where you personally believed that you were medically fit to return to work?
>
> A: Yes, when I went back to work.
>
> Q: Now, was this an opinion of your physician or just your opinion?
>
> A: He never told me I couldn't work.

---

[12] Plaintiff testified he did not remember the date he had the phone call. Pettigrew Decl. at Ex. 8 at 278:23-279:3.

[13] The Court notes overlap in the exhibits Defendants and Plaintiff submitted with their briefs in support and in opposition to the Motions for Summary Judgment. *See* ECF Nos. 99, 101, 109, 111. To the extent the parties submitted the same documents, the Court will cite to the exhibits submitted by Holtec. The Court also notes several declarations on the docket that are titled "Declaration of Robert M. Pettigrew Esq." For clarity, the Court only cites to the declaration submitted with Holtec's brief in support of its Motion for Summary Judgment. *See* ECF No. 98-3.

. . . .

Q: Did you seek an opinion as to whether or not you were medically able to return to work?

A: Not really, no. I just told him I was going back to work. I felt good, I'm better, I'm going back to work.

Pettigrew Decl. at Ex. 7 at 93:23-94:4; 94:14-18.

Additionally, defense counsel asked Plaintiff whether he believed he was disabled after completing the first campaign he worked on in 2018 following his return back to work from medical leave. Plaintiff stated he did not believe he was disabled. The following exchange occurred, in relevant part:

Q: Do you recall, after the 2018 Farley campaign, that your title was reclassified or declassified from supervisor to technician 2?

A: Yeah, I was aware of it. I felt it in my paycheck. That's the third time they did it. 10 to $15 a time. If that's not discrimination, there is no such thing.

Q: And you believe they did that on account of your disability?

A: Yes, I do.

Q: Do you believe you were disabled during this period?

A. No, I wasn't.

Pettigrew Decl. at Ex. 7 at 151:21-152:8.

Lastly, Holtec's defense counsel asked Plaintiff whether certain medical difficulties listed in the Amended Complaint[14] impacted his ability to perform his job duties when he returned to work in 2018. Plaintiff stated those medical difficulties did not affect his job duties. The following exchange occurred, in relevant part:

---

[14] While Holtec's defense counsel asks Plaintiff about the "complaint" in the deposition, the Court gleans from this exchange that defense counsel's reference to the complaint is in fact a reference to the Amended Complaint.

Q: In paragraph 19 you state that you remained on your leave of absence through February of 2018 until you were - - cleared to return to work. But by - - by whom were you cleared to return to work by?

A: Nobody. I decided I wanted to go back to work.

. . . .

Q: Now, in paragraph 20 you assert that you had several difficulties performing everyday activities, and - - and this paragraph lists fatigue, weakness, abdominal and back pain, headaches, speech issues, and other conditions relating to your medical conditions. Is that a true statement?

A: In the beginning a little bit. But, I mean, it has a lot to do with my age, too, I believe.

. . . .

Q: So at the time that you returned to - - to work in 2018 you were suffering from these difficulties that are set forth here in this - - in this paragraph of the complaint?

A: I wasn't suffering from them, but I did have some.

Q: Did you have some of them or all of them?

A: Let me read them again. When he returned to work - - the fatigue, it depends upon how much work we had to do that day. Weakness, no. Backpain and headaches, possibly.

Q: How about speech issues?

A: I did have some speech issues after my radiation and chemotherapy.

Q: And it says "other related conditions relating to your medical conditions." What is that referring to?

A: I have no idea.

Q: Now, did any of these difficulties impact your ability to perform your - - your job duties when you returned?

A: No, it did not.

Q: Being fatigued and weak didn't impact you whatsoever?

A: No, it didn't. I could take breaks anytime I needed to.

Pettigrew Decl. at Ex. 8 at 236:20-25; 237:5-12; 237:21-238:20.

During the course of this litigation, Defendants obtained a complete file of Plaintiff's SSA records, which includes documents that were not available to them when they filed their Motions.

9

Shea Decl. [15] ¶¶ 5, 6; Pettigrew Sur-Reply Decl. ¶ 2. The file includes various reports Plaintiff submitted in 2022 to the SSA documenting physical and mental challenges, an October 2022 letter from the SSA with its decision to discontinue Plaintiff's SSDI benefits because it no longer considered Plaintiff disabled, Plaintiff's appeal of the SSA's October 2022 decision, and a neuropsychological and vocational evaluation produced by Defendants' expert, Dr. Mark S. Wagner, which Plaintiff submitted in support of his appeal of the SSA's decision. *See* Shea Decl. at Exs. 40-42; Pettigrew Sur-Reply Decl. at Exs. A - H. In his report, Dr. Wagner opined that Plaintiff "is presenting with significant neurocognitive weaknesses impacting his overall attention/concentration skills, which further adversely impacts his general memory for both verbal and non-verbal information that is presented to him." Pettigrew Sur-Reply Decl. at Ex. H at SSA-2 0455. Dr. Wagner further opined that the "issues that [Plaintiff] is presenting with are effectively impeding his ability to work and sustain ongoing employment." *Id.* Plaintiff currently continues to receive SSDI benefits. Pl.'s Opp'n Br. – Supplemental at 4.

A court may grant summary judgment only when the materials of record "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

---

[15] The Court notes several declarations on the docket that are titled "Declaration of John D. Shea, Esq." For clarity, the Court only cites to the declaration submitted in support of Sonic and Murray's supplemental briefing which this Court granted leave to file. ECF Nos. 118, 120.

In considering a summary judgment motion, the district court "may not make credibility determinations or engage in any weighing of the evidence." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013). The moving party has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its burden, the burden then shifts to the nonmoving party to go beyond the pleadings and 'come forward with "specific facts showing that there is a genuine issue for trial.""" *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the non-moving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *See Anderson*, 477 U.S. at 256-57. "A non-moving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the non-moving party. *See Matsushita*, 475 U.S. at 587.

As previously noted, the Court recognizes that genuine issues of material fact exist among the parties and between the Defendants themselves with respect to whether Plaintiff was an employee of either Holtec or Sonic. Moreover, there are genuine issues of material fact with respect to Defendants' responsibilities over aspects of Plaintiff's employment.[16] These issues of

---

[16] For example, it is disputed who supervised Plaintiff. Defendants state that during the relevant period, Plaintiff was under the supervision of Gunther. Holtec's SMF ¶ 12. Plaintiff denies this statement, disputing that Gunther was his supervisor. Pl.'s RSMF ¶ 12. Instead, Plaintiff states Holtec was in charge of supervising Plaintiff. Pl.'s CSMF ¶¶ 11, 45. Moreover, subject to dispute is whether Holtec, Sonic, or both entities hired and fired Plaintiff. Holtec's SMF ¶¶ 11, 242-46; Pl.'s RSMF ¶¶ 11, 243-46; Pl.'s CSMF ¶¶ 2-6, 121-24.

11

material fact necessarily preclude this Court from granting summary judgment as to Plaintiff's ADA, ADEA, and NJLAD, much less evaluating whether a joint employment relationship existed.

Defendants argue that Plaintiff is judicially estopped from pursuing his ADA, ADEA, and NJLAD claims because Plaintiff cannot reconcile contradicting statements to the SSA with allegations that he can perform his prior job and newly obtained SSA records demonstrate Plaintiff has continuously attempted to maintain his disability status since his June 2017 medical diagnosis.

"Judicial estoppel is a 'judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he or she] has previously asserted in the same or in a previous proceeding.'" *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 272 (3d Cir. 2012) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)). "When properly invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he or she previously took before a court or agency." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 779 (3d Cir. 2001). The doctrine is "not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts." *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998). While invocation of the doctrine is within a court's discretion, *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), its application is an extraordinary remedy to be invoked only "when a party's inconsistent behavior will otherwise result in a miscarriage of justice." *Ryan Operations G.P.*, 81 F.3d at 365.

In this case, numerous questions have been raised with respect to the record presented by Defendants which preclude the Court from applying judicial estoppel at this stage in the litigation. By way of example, the Court is not able to reconcile Plaintiff's deposition testimony with his Social Security records. Plaintiff's statement from one of his Continuing Disability Reports that

12

he "went back to work for awhile, but was unable to do my job due to my condition," a statement that is, in part, relied on by Defendants in their arguments for judicial estoppel, does not provide factual context for the Court to glean exactly what period of time Plaintiff is referring to. Further weakening Defendants' arguments with respect to this statement is that Plaintiff filed the Continuing Disability Report at least one year after he was no longer working on campaigns affiliated with Holtec and Sonic. With the benefit of additional discovery, Defendants may raise the argument that Plaintiff's claims are barred by judicial estoppel at a later stage in this litigation. Accordingly, the Court denies the application of judicial estoppel without prejudice.

## ORDER

**IT IS** this 30th day of **September, 2023**, hereby

**ORDERED** that Defendants' Motions for Summary Judgment (ECF Nos. 98, 100) are **DENIED**; and it is further

**ORDERED** that Defendants may present a judicial estoppel argument at a later stage in this litigation if, with the benefit of further discovery, Defendants are able to develop the purported inconsistencies between Plaintiff's claims and his statements made to the Social Security Administration.

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE

13